**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF MICHIGAN**

In Re:

Laura Carroll

Chapter 12
Case No.: 12-10333
Hon. Scott W. Dales
Filed: November 29, 2012

**Debtor          /**

**CHAPTER 12 PLAN OF REORGANIZATION**

The plan will use the term "Debtor" to refer to the person or both persons who filed the Petition in this case.

**INTRODUCTION**

The Plan of the Debtor outlined and stated below will call for certain payments to begin immediately and others to be delayed. The Debtor's proposal for payments is based on the following factors:

A.   The relative time of Plan commencement, vis a vis, the hunting season and/or sale season of the livestock. Further, Debtor's cash flow allows for ongoing payments in accordance with the timing and amounts set forth herein while still allowing rehabilitation.

B.   The Plan is proposed in good faith and not by any means forbidden by law pursuant to 11 USC §1225, and all projections are in good faith.

C.   To the best of Debtor's knowledge, the Plan comports with all the provisions of the Code.

D.   All values are based upon good faith estimates and/or previous agreements between certain creditors, and are based upon timing of Confirmation.

E.   To the best of the Debtor's knowledge, unsecured creditors will receive more than the Chapter 7 liquidation value of the Debtor's property as of the date of filing. The liquidation value of the Debtor's property is difficult to estimate because the sale of the livestock is currently limited by the deer wasting disease restrictions.

### ARTICLE 1
### PLAN PAYMENTS AND ACCOUNTING

A. Payments: The Debtor shall make payments to the Trustee of $3,000.00 per month for the first 12 months. In the 13th month, the Plan payment will increase to $6,000.00 per month. In addition, the Debtor will provide tax refunds as necessary to complete the Plan within 60 months.

B. Accounting: Post confirmation, the Debtor shall:

    a. Provide the Trustee with monthly profit/loss, balance sheets, and bank accounts. The Debtor will make every effort to provide the statements to the Trustee by the 15th day of month following the reporting period.

    b. Provide the Trustee with the annual tax returns and supporting documents.

### ARTICLE 2
### DEFINITIONS

**Allowed Claim** shall mean a Claim in respect of which a proof of claim has been filed with the Court within the period of limitation fixed by Rule 3001 as to which no objection to the allowance thereof has been raised within any applicable period of limitation fixed by Rule 3001 or an order of the Court, as to which any such objection has been determined by an order or judgment which is no longer subject to appeal or certiorari proceeding and as to which no appeal or certiorari proceeding is pending.

**Claim** shall have the meaning as set forth in 11 U.S.C. § 101 and include any right to payment, or right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, against the Debtor(s) in existence on or as of the Petition date, whether or not such right to payment or right to equitable remedy is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, not matured, disputed, undisputed, legal, secured and unsecured.

**Allowed Secured Claim** shall mean an allowed claim secured by a lien, security interest or other charge against or interest in property in which the Debtor(s) has/have an interest, or which is subject to

set off under §553 of the Code, to the extent of the value (determined in accordance with §506(a) of the Code) of the interest of the holder of such allowed claim in the Debtor(s) interest in such property or to the extent of the amount subject to such set off, as the case may be.

**Allowed Undersecured Claim** shall mean the difference between a creditor's allowed claim less such creditor's allowed secured claim, and for which no lien, security interest or other charge against or in property in which the Debtor(s) has/have an interest is held.

**Allowed Unsecured Claim** shall mean the allowed claim of a creditor for goods or services to Debtor(s) prior to the filing of this Chapter 12 case, which is not secured by a lien, security interest, or other charge against property of the estate, or subject to set off pursuant to §553 of the Code.  This definition may include undersecured claims.  This definition does not include tax claims given priority status and treatment.

**Effective Date** shall be the date an Order is entered by the Court confirming the Plan.

**Final Order** shall mean an order or a judgment of the Court which has not been appealed and as to which order or judgment (or any revisions, modification, or amendment thereof) the time to appeal or seek review or rehearing has expired.

**Petition Date** shall mean the date on which the Debtor(s) filed a voluntary Chapter 12 Petition with the Court.

**Plan** shall mean this Chapter 12 Plan of Reorganization in its present form or as may thereafter be amended, modified, or supplemented in accordance with the terms hereof or in accordance with the Code.

### ARTICLE 3
### TRUSTEE'S FEE

The Debtor submits all or such portion of the Debtor's future income to the supervision and control of the Trustee, as in, or may be necessary for the execution of the Plan.  Debtor agrees to pay the Trustee pursuant to statute for all disbursements paid through the Plan, and commits future disposable

income as defined in 11 U.S.C. §1225(b)(2) during the course of the plan for payment to unsecured creditors.

## ARTICLE 4
### ADMINISTRATIVE AND PRIORITY CREDITORS

The Debtor's Chapter 12 administrative expenses that are allowed pursuant to §503(b) of the Code and each allowed claim entitled to priority pursuant to §507(a)(2) or (6) of the Code shall be paid in full in deferred cash payments unless otherwise ordered by the Court, or upon such other terms as may be agreed upon by holder of such allowed expense or allowed claim and the Debtor(s). Where required by the Code and upon approval by the Court, Debtor shall pay all administrative expenses on a current basis. These claims shall be unimpaired.

1.  **Debtor's Attorney** – Upon application and an Order Approving Additional Fees, any additional attorney fees shall be paid in full by the Trustee after payment of the ongoing mortgage payment to the Bank of New York Mellon and Trustee's fees are paid. The total unpaid professional fees as of the date of this Plan are estimated to be approximately $10,000. This amount will be partially covered by the remainder of the prepetition retainer. Additional fees will be incurred before the Effective Date of the Plan and will continue until the Plan completes. Any additional allowed attorney's fees will reduce the base to the unsecured creditors.

## ARTICLE 5
### CLASSIFICATION AND TREATMENT OF CLAIMS

A.  **PRIORITY CLAIMS**

**Class 1: Tax Claims:** Class 1 consists of tax claims. The Debtor has not filed her 2011 or 2012 tax returns. The Debtor expects the returns to be filed shortly. To the extent that a tax claim exists and qualifies for priority status, such claim shall be paid in full with interest at the statutory rate on such claim. The trustee shall make all payments on the claim. Any tax claim not entitled to priority status will be paid as an unsecured Class 5 claim.

4

**Class 2: Priority Non-Tax Claims**: Class 2 consists of Priority Claims under 11 USC 507 other than Administrative Claims or tax claims. The Debtor is unaware of any such claims and no claims have been filed. To the extent such claims exists, the claim shall be paid in full with interest at the statutory rate on such claim. The Trustee shall make all payments.

B. **SECURED CLAIM OF BANK OF NEW YORK MELLON**

**Class 3: Bank of New York Mellon**: Class 3 consists of the secured prepetition claim of Bank of New York Mellon, in the estimated amount of $664,000.00 as of the filing date, which is secured on the Debtor's farm house and surrounding farm land at 700 Trent Rd., Ravenna, MI 49451. This claim is disputed. The Debtor is currently reviewing whether an Adversary Proceeding may be brought to avoid the lien. If an adversary proceeding is not brought, the secured claim to Bank of New York Mellon shall be valued under 11 USC 506(a) at $275,000.00 as of the Effective Date of the Plan. This valuation is per an appraisal dated February 12, 2013 (Exhibit A). If Bank of New York Mellon disputes the value of the collateral stated above, it must timely file an objection to confirmation, or the value stated by the Debtor will be determined to be the value of the collateral. The balance of this claim shall be treated for all purposes as an unsecured Class 5 Claim. The secured portion of this claim shall be paid at 5% interest over a 30 year fixed mortgage payment. The Trustee will make payments of $1600.00 per month to the lender with the first payment due 30 days after the Effective Date. Upon the completion of the Plan, the Debtor will continue to make payments directly to Bank of New York Mellon for the remainder of the 30 year mortgage. The Debtor disputes the amount of the arrears on this claim. Allowed arrears will be cured within 36 months, will be paid by the Trustee, and will be paid pro rata with priority claims after the ongoing mortgage and administrative claims are paid.

**Class 4: Chemical Bank:** Claim 2 consists of the secured prepetition claim of Chemical Bank. The lien secures a general business line of credit for Bucks Bullets, LLC. The Debtor is current on all

5

payments and the payments will continue to be made directly from Bucks Bullets, LLC to the lender. Lender shall retain its lien securing loan the line of credit.

**C.    EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

**Class 5: K&D Freeland Deer:** Claim 3 consists of an executory contact with K&D Freeland Deer for the lease of additional real property for the farm. This contact is assumed. The Debtor's business, Whitehouse Whitetails, Inc., will continue making direct payments to K&D Freeland Deer.

**Class 6: Executory Contracts and unexpired leases relating to general operations**: All executory contracts and unexpired leases relating to the general farming operations, and all other operations of the Debtor are hereby assumed.

**D.    GENERAL UNSECURED CLAIMS**

**Class 7: Unsecured Claims**: All general unsecured claims shall share in a base amount of a minimum of $30,000.00. Any additional Disposable Income earned will be devoted toward payment of claims in this class. The Plan will be reviewed annually to determine if there is additional disposable income. All of the Debtor's disposable income received in the three year period beginning on the date that the first payment is due under the Plan will be applied to make payments under the Plan.

**Class 6: Special Class Unsecured Claims: None.**

### ARTICLE 6
### PAYMENTS OF CLAIMS BEYOND THE TERM OF THE PLAN

All secured claims, except as provided above, will extend, by their terms, beyond the term of this Plan, and will continue to be paid over an extended period of time, as described above.

### ARTICLE 7
### RETENTION OF JURISDICTION

Until this case is closed, the Court shall retain jurisdiction (i) to hear and determine all claims against Debtor(s) arising prior to Confirmation date, (ii) to hear and determine all claims and causes of action arising prior to the Confirmation date which may exist in Debtor(s) favor if Debtor shall seek such

hearing and determination of the Court, (iii) to hear and determine all matters relating to the administration of the bankruptcy estate, (iv) to modify the Plan pursuant to the provisions of §1229 of the Code, and (v) to make such orders as are necessary or appropriate to effectuate the provisions of the Plan in accordance with §1226, §1227, and §1228 of the Code. The Court shall retain jurisdiction until the Plan is completed, or a discharge has been granted unless this case is dismissed or Converted by Order of the Court on a prior date. This Article shall not be construed to alter post confirmation administrative rights or remedies.

## ARTICLE 8
## VESTING OF PROPERTY OF THE ESTATE

Except as provided in §1228(a) of Title 11, United States Code, and except as provided in this Plan or the order Confirming Plan, the property of the estate is vested in the Debtor(s) free and clear of any claim or interest of any creditor provided for by this Plan, pursuant to §1227(b) of Title 11, United States Code.

## ARTICLE 9
## EFFECTIVE DATE OF PLAN

This Plan shall be effective on the date of the Order Confirming the Plan; provided, however, that no appeal of the Order of Confirmation has been filed. In the event such an appeal is filed, this Plan shall be effective as of the date the Order of Confirmation becomes final and binding on all parties.

## ARTICLE 10
## MISCELLANEOUS PROVISIONS

A.   Execution of the Plan – The Debtor(s) shall generate the funds necessary for the execution of this plan through earnings of the Debtor(s).

B.   Ordinary Course of Business: The Debtor(s) shall be allowed, without approval of this Court, to seek operating loans to continue ongoing farming operations. Said loans shall be deemed in the ordinary course of business.

C. Co-signors: If Buyers of the Debtor(s) farm products issue checks co-signed to lien-holders, then the lien holder shall release the proceeds to the Debtor(s) so long as payments by the Debtor(s) to the Trustee and to creditors under this Plan are kept current. In the alternative, the lien holder shall endorse the check payable to the Trustee.

D. Other Income: Any and all income of the Debtor(s) which is paid to the Trustee by an entity or person, other than by the Debtor(s), shall be released by the Trustee to the Debtor(s), unless otherwise provided in this Plan or as directed by subsequent Court order, so long as all payments by the Debtor(s) to the Trustee and to creditors under the Plan are kept current. No additional orders shall be necessary and said releases to the Debtor(s) shall not be subject to the Trustee's commission.

Date: 2/27/13

/s/ Laura L. Carroll
Laura A. Carroll, Debtor

8